[Cite as *In re H.C.*, 2013-Ohio-5871.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| H.C. AND B.C. | ) | |
| | ) | CASE NOS. 13 HA 5 |
| DEPENDENT CHILDREN | ) | 13 HA 6 |
| | ) | |
| | ) | OPINION |
| | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas, Juvenile Division of Harrison County, Ohio
Case Nos. 20013057, 20113058

JUDGMENT:     Affirmed

APPEARANCES:
For Appellee     Attorney Jeffrey M. Kiggans
389 16th Street, SW
New Philadelphia, Ohio 44663-6401

For Appellant     Attorney Travis Collins
P.O. Box 271
Cadiz, Ohio 43907

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: December 31, 2013

DONOFRIO, J.

{¶1} Appellant, Amber C., appeals from a Harrison County Juvenile Court judgment granting the motion of appellee, the Harrison County Department of Job and Family Services, for permanent custody of appellant's two children.

{¶2} Appellant and Steven C. are the biological parents of the two children whose custody is at issue in this case, H.C. (d.o.b. 1/1/10) and B.C. (d.o.b. 8/15/11). They have never been married but maintained a relationship for many years.

{¶3} On November 3, 2011, appellee filed complaints alleging the children were dependent due to domestic violence between appellant and Steven that occurred with the children in the home and resulted in the arrest of both parents. Apparently, appellant chased Steven with a knife after he called her fat and he punched her in the face. Appellant and Steven stipulated the children were dependent and the court entered judgments to that effect. The court ordered the children were to remain in appellant's temporary custody under the protective supervision of appellee. A case plan was put into effect for appellant and Steven that included psychological evaluations and counseling, stable housing, obtaining driver's licenses, and appellant obtaining her GED.

{¶4} On March 2, 2012, after a shelter care hearing, the court placed the children in appellee's temporary custody finding that the parents had past drug use and domestic violence in excess of what was initially reported, made very little progress in counseling, and were unable to provide a safe, secure environment for the children.

{¶5} On October 15, 2012, appellee filed motions for permanent custody of the children, which the trial court denied after a hearing on the matter. The court granted the parents a six-month extension to work on their case plans and noted appellee was very close to meeting its burden for permanent custody.

{¶6} On May 9, 2013, appellee again filed motions for permanent custody. The trial court held another hearing where it heard evidence from the time of the last hearing to the present. The court found the children had been in appellee's temporary custody for 12 or more months of a consecutive 22-month period and that

it was in the children's best interests that they be placed in appellee's permanent custody.

**{¶7}** Appellant filed timely notices of appeal on July 2, 2013. This court consolidated the two cases for appeal.

**{¶8}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972). However, this right is not absolute. *In re Sims*, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, ¶23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id.*

**{¶9}** We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *Sims*, 7th Dist. No. 02-JE-2, ¶36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶10}** Appellant raises three assignments of error, the first of which states:

THE TRIAL COURT DEPRIVED APPELLANT OF HER RIGHT TO PROCEDURAL DUE PROCESS WHEN THE TRIAL COURT DID NOT INCLUDE AN EXPLANATION OF THE IMPORT OF GRANTING A MOTION FOR PERMANENT CUSTODY ON THE NOTICE OF THE FILING OF THE MOTION FOR PERMANENT CUSTODY AND NOTICE OF THE HEARING AS REQUIRED BY R.C. 2151.414.

**{¶11}** Appellant argues that neither appellee nor the trial court complied with the statutorily-mandated requirements governing notice of the motion for permanent custody and the hearing. She asserts that the notice provided to her by the court failed to contain the necessary explanation of granting permanent custody.

**{¶12}** R.C. 2151.414(A)(1) provides in pertinent part:

Upon the filing of a motion pursuant to section 2151.413 of the

Revised Code for permanent custody of a child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem. The notice also shall contain a full explanation that the granting of permanent custody permanently divests the parents of their parental rights, a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent, and the name and telephone number of the court employee designated by the court pursuant to section 2151.314 of the Revised Code to arrange for the prompt appointment of counsel for indigent persons.

{¶13} Pursuant to the statute, the trial court is required to include with the notice of hearing for permanent custody an explanation that the granting of permanent custody permanently divests the parents of their parental rights and an explanation of the parents' right to appointed counsel if they are indigent.

{¶14} In this case, the trial court's notice of hearing on appellee's permanent custody motion does not contain the statutorily-required information. It simply advises appellant of the date and time of the hearing on appellee's motion to modify disposition.

{¶15} Despite the inadequacy of the notice, however, appellant was well-aware of the nature of the proceedings and her right to counsel.

{¶16} First, the motion to modify disposition was served on appellant. The motion made clear that appellee was seeking permanent custody.

{¶17} Second, this was appellee's second motion to modify the disposition to permanent custody. Appellant had also appeared at and testified at the hearing on the first motion, which was held just six months prior. In fact, at the hearing on the first motion, appellant was asked:

> Q     You understand that there is a permanent custody motion that has been filed.  You understand that.
>
> A     Yes.
>
> Q     And do you understand what that means?
>
> A     Yes.
>
> Q     So what does it mean if the court were to grant permanent custody?
>
> A     That they take the kids for good, Children Service does.
>
> Q     And then you would have - -
>
> A     I would have nothing to do with the kids or anything if they take them.

(Jan. 31, 2013 Tr. 276)  Thus, appellant was well aware of what it meant for appellee to seek permanent custody.

{¶18} Third, appellant appeared at the hearing with her court-appointed counsel.  (May 30, 2013 Tr. 3).  Most of the statutory requirements for the notice concern the right to court-appointed counsel and how to go about obtaining counsel.  Clearly, appellant was well aware that she was entitled to court-appointed counsel and she took advantage of counsel's services.

{¶19} Fourth, at the hearing, appellant's counsel did not object to any defect with the notice.  Thus, in addition, any error that might exist regarding notice is waived.

{¶20} Based on the above, any error that might exist with the notice of the hearing was waived.  Accordingly, appellant's first assignment of error is without merit.

{¶21} Appellant's second assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY APPLYING THE BEST INTERESTS TEST CONTAINED IN R.C. 2151.414(D)(2) WHEN APPELLANT'S CHILDREN HAD NOT BEEN IN

THE AGENCY'S CUSTODY FOR TWO YEARS OR LONGER.

**{¶22}** Here appellant acknowledges her children were in appellee's temporary custody for 12 or more months of a consecutive 22-month period. Appellant argues, however, that because the children were not in appellee's custody for two years or longer, the trial court was required to apply the best interest test set out in R.C. 2151.414(D)(1) and not the best interest test set out in R.C. 2151.414(D)(2). She asserts that the trial court mistakenly made best interest findings as to both best interest tests. Appellant argues this was a significant mistake because the test in (D)(2) provides that upon making certain findings the court "shall" grant permanent custody to the agency but that the test in (D)(1) directs the court to use its discretion its determining whether to grant permanent custody to the agency. She contends that because the trial court applied the wrong test, we must reverse its decision.

**{¶23}** The best interest test set out in R.C. 2151.414(D)(1) provides:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * , the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division

(D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section [dealing with convictions for murder, assault, child endangering, and sex offenses; withholding food or medical treatment; placing the child at risk due to drug or alcohol abuse; abandonment; and having parental rights terminated previously] apply in relation to the parents and child.

{¶24} On April 7, 2009, the Legislature amended R.C. 2151.414(D). Prior to that time, the only best interest test was the one set out in the current version of R.C. 2151.414(D)(1). The amendment of the statute added another best interest test as set out in R.C. 2151.414(D)(2) and provides:

(2) *If all of the following apply,* permanent custody is in the best interest of the child and *the court shall commit the child to the permanent custody* of a public children services agency or private child placing agency:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned

permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

(Emphasis added.) Thus, R.C. 2151.414 (D) now contains two separate best interest tests.

**{¶25}** In its judgment entry, the court seemingly applied both the (D)(1) best interest test and the (D)(2) best interest test.

**{¶26}** First, the court correctly stated that pursuant to R.C. 2151.414(B)(1), it was required to determine by clear and convincing evidence that it is in the children's best interests to grant permanent custody to appellee and whether the children have been in appellee's temporary custody for 12 or more months of a consecutive 22-month period.

**{¶27}** The court found that the children had been continuously in appellee's temporary custody since March 1, 2012, approximately 14 months at that time. Therefore, the court moved on to R.C. 2151.414(D)(1) to determine whether the granting of permanent custody would be in the children's best interests.

**{¶28}** The court analyzed each of the five best interest factors set out in R.C. 2151.414(D)(1)(a) through (e). It went into great detail regarding each of the five factors. It took into consideration the children's "very good relationship" with their foster parents, their "appropriate" relationship with their parents during supervised visits, the children's need for legally secure placement that could only be met by a grant of permanent custody, the parents' recent criminal convictions, the parents' admitted $2,400/month heroin and crack cocaine addiction and stealing to fund their habit, the parents' history of domestic violence against each other, and appellant's pending charge for prostitution.

**{¶29}** After almost two whole pages discussing the R.C. 2151.414(D)(1) factors, the court then turned its attention to R.C. 2151.414(D)(2). The court found by

clear and convincing evidence that, pursuant to R.C. 2152.414(D)(2)(a) and R.C. 2151.414(E)(1) which must be considered in examining the R.C. 2151.414(D)(2) factors, appellee has used reasonable efforts to reunite the family but the parents failed at their case plan. It also found by clear and convincing evidence, pursuant to R.C. 2151.414(D)(2) and R.C. 2151.414(E)(2), that Steven is schizophrenic and appellant is bipolar and due to their poor choices regarding criminal activity and rampant drug use, they are unable to provide an adequate permanent home for their children. The court next found by clear and convincing evidence, pursuant to R.C. 2151.414(D)(2)(a) and R.C. 2151.414(E)(4), that the parents have demonstrated a lack of commitment and an unwillingness to provide an adequate permanent home for the children. Next, pursuant to R.C. 2151.414(D)(2)(c), the court found that the children did not meet the requirements for a planned permanent living arrangement. Finally, the court found, pursuant to R.C. 2151.414(D)(2)(d), that no relative or other interested person has been identified in a motion for legal custody of the children.

{¶30} The court concluded its decision by stating it found by clear and convincing evidence that appellee used reasonable efforts to reunify this family, however, the family was unable to do so. Therefore, the court found it was in the children's best interests that they be placed into the permanent custody of appellee.

{¶31} In discussing when to apply the two best interest tests, the Second District stated:

> As we understand division (D)(2), if all of the facts enumerated therein apply, then an award of permanent custody is in the child's best interest, and the trial court need not perform the weighing specified in division (D)(1). But if it is not the case that all of the facts enumerated in division (D)(2) exist; that is, if any one of the facts enumerated in division (D)(2) does not exist, then the trial court must proceed to the weighing of factors set forth in division (D)(1) to determine the child's best interest.

*In re K.H.*, 2d Dist. No. 2009-CA-80, 2010-Ohio-1609, ¶54. See also, *In re M.K.*, 10th Dist. Nos. 09AP-1141, 09AP-1142, 2010-Ohio-2194, ¶20.

**{¶32}** As appellant asserts, the R.C. 2151.414(D)(1) best interest test sets out factors that the court must consider in determining a child's best interest. It does not require a finding based upon meeting certain conditions. On the other hand, the R.C. 2151.414(D)(2) best interest test requires the court to find permanent custody is in the child's best interest and commit the child to permanent custody of the agency if the four listed conditions are met.

**{¶33}** Here the trial court should not have discussed the R.C. 2151.414(D)(2) test. Because the children were only in appellee's custody for 14 months at the time of the hearing, the (D)(2) test did not apply.

**{¶34}** Nonetheless, the trial court's discussion of the R.C. 2151.414(D)(1) factors clearly supports a finding that it is in the children's best interests to grant permanent custody to appellee. The evidence cited by the trial court in support of the R.C. 2151.414(D)(1) factors clearly and convincingly demonstrates that permanent custody is in the children's best interest. After finding that the children were in appellee's temporary custody for 12 of the last 22 months, the trial court made detailed findings as to each of the (D)(1) best interest factors. And as will be seen below, the trial court's findings are supported by the evidence presented. The court's reference to the R.C. 2151.414(D)(2) was superfluous.

**{¶35}** Accordingly, appellant's second assignment of error is without merit.

**{¶36}** Appellant's third assignment of error states:

THE TRIAL COURT'S FINDING THAT THE GRANTING OF PERMANENT CUSTODY OF APPELLANT'S CHILDREN WAS IN THE CHILDREN'S BEST INTERESTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

**{¶37}** In her final assignment of error, appellant argues that the trial court's finding that permanent custody to appellee was in the children's best interests was

not supported by the evidence. She asserts the trial court made improper findings as to R.C. 2151.414(D)(1)(d) and (e) because she was never convicted of any of the crimes listed in R.C. 2151.414(E)(7) through (11) and none of the incidents cited by the trial court involved the children in any way. Appellant also takes issue with the court's finding that she could not provide the children with a legally secure permanent placement. She contends the evidence demonstrated that she was living either with her mother or her new boyfriend and there was no evidence that either residence was inappropriate for the children. Appellant further takes issue with the court's finding that she suffers from bipolar disorder, claiming the evidence on this point was not credible.

{¶38} Appellant also points to evidence regarding the positive steps she has taken including obtaining a psychological assessment, obtaining a driver's license, beginning counseling, securing housing, and attending all visitations with the children.

{¶39} The trial court may grant permanent custody of a child to the agency if the court determines by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

{¶40} Dr. Rajendra Misra is a psychologist who evaluated appellant. He testified that from his evaluation, he learned appellant's cognitive skills are impaired, she shows a pathological level of anger, she has a past history of attention deficit hyperactivity disorder and bipolar disorder, she was placed on medication as a child, which she stopped taking on her own, and she tested positive for marijuana. (Nov. 26, 2012 Tr. 24). Dr. Misra also opined appellant shows features of borderline personality disorder. (Nov. 26, 2012 Tr. 33).

**{¶41}** Marie Seiber was the children's guardian ad litem. It was her recommendation both in January 2013 and again in May 2013, that the children be placed in appellee's permanent custody. (Jan. 31, 2013 Tr. 114; May 30, 2013 Tr. 5). Seiber gave several reasons in support of her recommendation including that both parents had been diagnosed with mental health problems, they have refused to address the domestic violence issues in their home, they were charged with animal cruelty, they have not followed through with counseling, and they have not been compliant with medications. (Jan. 31, 2013 Tr. 119-123). At the more recent hearing, Seiber also cited appellant's recent prostitution charge and appellant's and Steven's arrests for charges relating to theft and marijuana plants found in their home. (May 30, 2013 Tr. 6). Seiber testified she did not believe the children could be afforded a legally secure placement with either of their parents. (May 30, 2013 Tr. 9-10).

**{¶42}** Seiber also testified regarding the children's relationship with their foster parents. She stated that when the foster parents first got the children, the foster mother quit her job to provide them with full-time care because the older child had aggression problems and could not be placed in a preschool and the younger child was severely underweight and delayed. (May 30, 2013 Tr. 8). She stated that the children now run around "as little boys do" and the foster parents laugh with them and make sure they do not get into trouble. (May 30, 2013 Tr. 8). She stated the foster home has a "very normal family feeling." (May 30, 2013 Tr. 8).

**{¶43}** Courtney Yarish, a service coordinator with Help Me Grow, testified that H.C. had delays in his communication but the foster parents worked with him and she was satisfied with their work. (Jan. 31, 2013 Tr. 127-128).

**{¶44}** Matthew S., the foster father, testified that when the children first came to his house, H.C. was very aggressive. (Jan. 31, 2013 Tr. 134). He stated H.C. punched the dog and tried to strangle her and put a pillow over his brother's face. (Jan. 31, 2013 Tr. 134). He stated that H.C.'s behavior improved dramatically over time. (Jan. 31, 2013 Tr. 136). Matthew also testified that he and his wife would seek

to adopt the children if appellee was granted permanent custody. (May 31, 2013 Tr. 43).

**{¶45}** Ron Carter, the Village of Jewett Chief of Police, testified he had recently investigated appellant for prostitution. (Jan. 30, 2013 Tr. 185). He had submitted the case to the prosecutor's office requesting that appellant be charged with prostitution and compelling prostitution. (Jan. 30, 2013 Tr. 185). Chief Carter testified appellant admitted to him that she committed acts that he believed to be prostitution. (Jan. 30, 2013 Tr. 188).

**{¶46}** Linda Schoppe is the social service worker for appellee who handled this case. Schoppe testified the children have been in appellee's temporary custody for 14 months, since March 1, 2012. (May 31, 2013 Tr. 50). She stated appellee initially became involved with the children in October 2011, when appellant chased Steven with a knife and the two engaged in an altercation. (Jan. 30, 2013 Tr. 193). Schoppe stated the children remained in the home at that point until February 2012, when she went to meet the parents at their home. (Jan. 30, 2013 Tr. 194). Schoppe then discovered the parents had received an eviction notice and were going to be homeless, they had been arguing because appellant had cheated on Steven, they had been using cocaine and snorting various other drugs, they had been using marijuana, and Steven had been selling drugs to earn money. (Jan. 30, 2013 Tr. 194-195). Based on this information, Schoppe had the children removed from the parents' house. (Jan. 30, 2013 Tr. 195-196).

**{¶47}** Schoppe stated appellee put a case plan in place that required appellant and Steven to go to individual, couples, and drug and alcohol counseling; complete a psychiatric assessment; and secure housing. (Jan. 30, 2013 Tr. 197). She stated that the parents had secured housing and completed the psychiatric assessments. (Jan. 30, 2013 Tr. 197). She also stated appellant had not completed counseling. (Jan. 30, 2013 Tr. 199).

**{¶48}** Schoppe further testified that just days before the last hearing date, appellant told her that she moved out and was no longer living with Steven, but was

instead living with her mother and had a new boyfriend. (May 31, 2013 Tr. 60). Appellant also told Schoppe the domestic violence between her and Steven had continued, resulting in four separate instances over the preceding months. (May 31, 2013 Tr. 61). Appellant further admitted to Schoppe that she and Steven were still using Vicodin. (May 31, 2013 Tr. 61). And she admitted to violating her probation by drinking alcohol with her new boyfriend. (May 31, 2013 Tr. 67). Additionally, appellant admitted to bringing a 16-year-old girl to her house where the girl had sex with a 29-year old man. (May 31, 2013 Tr. 68-69). Schoppe did note that appellant's drug test the day of the hearing was negative. (May 31, 2013 Tr. 74). Schoppe also identified a recent judgment entry evidencing appellant's conviction for complicity to commit breaking and entering. (May 31, 2013 Tr. 58).

{¶49} Schoppe did testify that when appellant and Steven visited the children they behaved appropriately. (May 31, 3013 Tr. 72). She noted that appellant plays with the children, chases them around, hugs and kisses them, and takes pictures of them. (May 31, 2013 Tr. 72).

{¶50} Schoppe opined that it was in the children's best interests for the court to grant permanent custody to appellee. (Jan. 30, 2013 Tr. 210; May 31, 2013 Tr. 71). She opined permanent custody was the only way the children could be provided with a stable and secure environment. (May 31, 2013 Tr. 71).

{¶51} Linda Porter is a supervisor with appellee. She testified appellant met with her and reported an incident over the summer where Steven hit her because she would not agree to engage in a sexual threesome with him and another woman. (Jan. 30, 2013 Tr. 254). Porter documented appellant's black eye. (Jan. 30, 2013 Tr. 254).

{¶52} Appellant testified at the first hearing, however, she chose not to testify in the second hearing out of concern that her testimony could be used against her in a criminal trial. (May 31, 2013 Tr. 83). During the first hearing, she stated that she was attending counseling but she had some issues with regular attendance because she lost her medical card and had no income. (Jan. 30, 2013 Tr. 277-279, 281, 283-

284).

**{¶53}** William Jones, a Lieutenant Detective with the Harrison County Sheriff's Office, testified regarding a case he was involved with dealing with appellant and Steven in April 2013. Lt. Jones testified that he interviewed appellant and Steven regarding a theft of copper. (May 31, 2013 Tr. 18-19). At the time of the interview, appellant and Steven had already been arrested. (May 31, 2013 Tr. 19). With appellant and Steven's permission, Lt. Jones invited Schoppe to sit in on the interviews. (May 31, 2013 Tr. 23).

**{¶54}** Lt. Jones stated he had been investigating the thefts of numerous batteries stolen from construction site equipment. (May 31, 2013 Tr. 20). He stated that appellant and Steven both admitted being involved where Steven would steal the batteries and appellant would sell them to a scrap yard for cash. (May 31, 2013 Tr. 20, 26). Lt. Jones further stated that appellant and Steven admitted they would take the cash to Steubenville where they would meet a drug dealer to purchase heroin or crack cocaine. (May 31, 2013 Tr. 22, 28). They stated this occurred on an almost daily basis. (May 31, 2013 Tr. 22). Appellant told Lt. Jones she had used cocaine within the past 24 hours. (May 31, 2013 Tr. 28).

**{¶55}** Given this testimony, the trial court had clear and convincing evidence under R.C. 2151.414(D)(1) on which to find that it was in the children's best interest to grant permanent custody to appellee. As set out above, the trial court made detailed findings as to each of the five R.C. 2151.414(D)(1) factors, which were supported by the testimony.

**{¶56}** Dr. Misra testified as to appellant's psychological issues, many of which were self-reported by appellant to the doctor. The guardian ad litem opined that the children could not be afforded a legally secure placement with either of their parents. She also testified regarding the "normal family feeling" of the children's home with their foster parents. Chief Carter testified that appellant confessed to him that she committed acts he believed to be prostitution. The social service worker admitted that appellant's supervised visits with the children were appropriate and that

appellant had complied with some aspects of her case plan. But she also detailed appellant's ongoing history of drug abuse, domestic violence, and crime. And Lt. Jones testified regarding appellant and Steven's criminal scheme whereby he stole batteries from construction sites, she sold the batteries to a scrap yard, and they used the money from the stolen goods to fund their heroin/cocaine addictions.

**{¶57}** Given this testimony, we must conclude that the trial court's judgment met the burden of clear and convincing evidence and was supported by competent, credible evidence. Accordingly, appellant's third assignment of error is without merit.

**{¶58}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, P.J., concurs.